UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Navigant Consulting, Inc., a Delaware
corporation,

                              Plaintiff,          CV-07-2302(CPS)(JMA)

     - against -                                  MEMORANDUM OPINION
                                                  AND ORDER
Konstantine Kostakis, an individual

                              Defendant.

-------------------------------------X

        Plaintiff Navigant Consulting ("plaintiff" or "Navigant")

filed a complaint ("Complaint") against defendant Konstantine

Kostakis ("defendant" or Kostakis") on June 7, 2007.[1]  Defendant

filed an answer ("Answer") and counterclaims ("Counterclaims") on

July 3, 2007, and Navigant filed a motion to dismiss the

Counterclaims on July 23, 2007.  Thereafter, Kostakis filed an

amended answer ("Amended Answer") and counterclaims ("Amended

Counterclaims) on August 6, 2007.  Navigant and Kostakis agreed

that the filing of the Amended Answer and Amended Counterclaims

mooted Navigant's July 23, 2007 motion to dismiss and Navigant

withdrew its motion on August 28, 2007.  On August 20, 2007, it

filed a motion to dismiss the Amended Counterclaims.  It is this

motion that is now before the Court.  For the reasons set forth

below, Navigant's motion is denied.

_____

        [1]  This Court has jurisdiction under 28 U.S.C. § 1332, as Navigant is a
corporation organized under the law of the State of Delaware with its
principal place of business in Chicago, Kostakis is a citizen of the State of
New York, and the amount in controversy exceeds $75,000.

**Background**

Navigant's complaint states claims against Kostakis for breach of fiduciary duty, breach of contract, and for recovery of a portion of Kostakis's signing bonus. Navigant alleges that Kostakis, while employed by Navigant, breached various agreements entered into between Navigant and Kostakis and violated his fiduciary duty, by soliciting and recruiting Navigant employees for a new business venture, depriving Navigant of corporate opportunities, and by failing to return a pro-rated portion of his signing bonus when he left Navigant.

In response, Kostakis filed counterclaims for fraudulent inducement and breach of contract against Navigant, alleging that Navigant engages in a systematic, fraudulent practice of soliciting individuals from other companies and thereby induces those individuals, including plaintiff, to join Navigant by making false and fraudulent promises it never intends to keep.

Kostakis alleges that in 2005 Navigant decided to develop a new practice area in capital markets - an area in which Navigant had little or no prior experience. Navigant is said to have first recruited Jess Varughese ("Varughese"), under whom Kostakis worked as a Senior Manager at a company called Bearing Point. On July 15, 2005, Varughese accepted Navigant's offer of employment.

During the summer of 2005, Navigant began actively soliciting Kostakis to leave his position with Bearing Point and

to join Varughese at Navigant. On or about June 16, 2005, Kostakis met with Doug Reichert, Navigant's Executive Managing Director, and others, to discuss this subject. Reichert told Kostakis that Navigant was interested in having Kostakis join Navigant, and that Navigant was prepared to do whatever it could to have Kostakis join the company.

Subsequent discussions occurred between June 20, 2005 and the end of that month. In the last week of June 2005, Kostakis explained to Reichert that he was reluctant to leave Bearing Point because had a senior management role at the company and because Bearing Point was planning, imminently, to promote Kostakis to be a Managing Director. Reichert responded by promising Kostakis that, if he joined Navigant, he would be named a Managing Director within a year. Reichert also promised Kostakis that he would receive $400,000 in compensation and represented to Kostakis that if the $400,000 figure was in excess of the amount that he was to receive from his base salary and any other compensation from Navigant, Navigant would make up the difference to ensure he received the $400,000. Kostakis alleges that Navigant never intended to keep these promises.

On September 2, 2005, Navigant sent Kostakis an offer of employment ("Offer Letter").[23] Navigant's Offer Letter contained

_____

[2] The Offer Letter, Recovery Agreement, Confidentiality Agreement and Stock Award Agreement are incorporated by reference in the Amended Counterclaims and thus I may consider them in determining the sufficiency of Kostakis's claims under Rule 12(b)(6). *Brass v. American Film Technologies,*

provisions concerning certain employment terms, including

Kostakis's base salary, $245,000, and eligibility to participate

in Navigant's discretionary bonus program. On September 7, 2005,

Kostakis accepted Navigant's offer of employment by signing and

returning the Offer Letter. On the same date, Kostakis also

signed a separate employment incentive recovery agreement

("Recovery Agreement")[4] and an agreement entitled "Agreement

Regarding Confidential Information, Intellectual Property, and

Non-Solicitation." On September 13, 2005, Kostakis signed a

second Confidentiality and Property Agreement ("Confidentiality

Agreement"). He also received, but never signed, a stock award

agreement ("Stock Award Agreement").[56] Kostakis alleges that

---

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

> [3] The Offer Letter states:
> The following terms will apply to this offer of employment:
> Base Salary: Your salary will be $245,000 . . .
> Employment Incentive Bonus: You will be paid a one-time Employment
> Incentive Bonus totaling $100,000 with your first pay-check. This
> payment will be subject . . . to your executing the attached
> [Recovery Agreement].

The offer letter also contained provisions concerning other employment terms,
including aspects of Navigant's bonus program ("Annual Variable Incentive
Compensation") and an initial equity grant to Kostakis under Navigant's Long-
Term Incentive Plan in an amount equal to $55,000.

> [4] The Recovery Agreement, which allows Navigant to recover a portion of
Kostakis's $100,000 signing bonus if he does not stay at Navigant for 24
months, states "This Agreement may be amended or modified only by written
agreement . . ."

> [5] The Stock Award Agreement provides:
> The [Long-Term Incentive] Plan, this Agreement, and any documents
> expressly referred to herein constitute the entire agreement of
> the parties with respect to the subject matter hereof and any and
> all prior oral or written representations are merged into this
> Agreement.

both parties also understood that Kostakis's employment agreement included additional terms, to which the parties orally agreed, that Kostakis's total annual compensation would be at least $400,000 and that he would be promoted to Managing Director within a year.

Kostakis began employment at Navigant on September 13, 2005. Kostakis alleges that he was instrumental in helping Varguhese build a successful capital markets practice at Navigant and that the company did not possess any expertise in the area prior to Kostakis's and Varughese's arrivals. In 2006 and the period of January through the end of April 2007, the practice exceeded its revenue goals.

After Kostakis began working at Navigant, Navigant, in early 2006, is alleged to have again orally promised to pay Kostakis a total annual compensation package of at least $400,000. Kostakis accepted this renewed promise, but the $400,000 was never paid. Although Kostakis's division is alleged to have generated approximately $7-8 million in net revenue in 2006, Kostakis's total compensation for 2006 was approximately $300,000. Nor did Navigant name Kostakis a Managing Director.

---

Only the Long-Term Incentive Plan is referred to in the Stock Award Agreement.

[6] The Offer Letter refers to the Recovery Agreement the Agreement Regarding Confidential Information, Intellectual Property, and Non-Solicitation, and the Long-Term Incentive Plan. It does not refer to the Stock Award Agreement or the Confidentiality Agreement.

Kostakis alleges that he later learned that Navigant made
similar promises of high compensation packages to induce
prospective hires to join Navigant without any intent to fulfill
such promises, and that such failure has caused widespread
discontent among Navigant's workforce.

**Discussion**

In considering a motion pursuant to Rule 12(b)(6), a court
should construe the complaint liberally, "drawing all reasonable
inferences in the plaintiff's favor," *Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*,
243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of
law or unwarranted deductions" need not be accepted. *First
Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.
1994). Indeed, conclusory allegations "will not suffice to
prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension
Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss,
"[t]he issue is not whether a plaintiff will ultimately prevail
but whether the claimant is entitled to offer evidence to support
the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375,
378 (2d Cir. 1995).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the
allegations in the complaint must meet the standard of
"plausibility." *See Bell Atl. Corp. v. Twombly*, --- U.S. ----,

127 S.Ct. 1955, 1970, 167 L.Ed.2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly's* anti-trust context), it must "amplify a claim with some factual allegations . . . to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11). The test is no longer whether there is "no set of facts" that plaintiff could prove "which would entitle him to relief." *Bell Atlantic*, 127 S.Ct. at 1969 (*quoting Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns*, 493 F.3d at 98 (*quoting Bell Atlantic*, 127 S.Ct. at 1965).

     *i. First Amended Counterclaim - Fraudulent Inducement*[7]

---

[7] The Stock Award Agreement contains an Illinois choice of law provision. Navigant, however, has moved to dismiss under New York law. There is no discussion by either party of what law should apply to the alleged oral agreements that provide the basis for Kostakis's two counterclaims, and both

To state a claim for fraudulent inducement Kostakis must show: (1) a knowingly false representation of a material fact by the other party, or a person acting on behalf of the other party, to the contract, and (2) detrimental reliance thereon. *Nat'l Union Fire Ins. Co. v. Worley*, 257 A.D.2d 228, 233 (1st Dep't 1999) (citing *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403 (1958)).

There are, to be sure, heightened pleading standards where fraud is concerned. Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See id*.

Fraud allegations in a complaint therefore must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Although the scienter requirement need not be plead with particularity, "[i]n order to avoid abuse . . . plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent." *Campaniello Imports, Ltd.*

---

parties make their arguments with reference to New York law. I therefore use New York law in my analysis.

*v. Saporiti Italia S.P.A.*, 117 F.3d 655, 663 (2d Cir. 1997).  The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *Shields*, 25 F.3d at 1128.

Kostakis has alleged that, during the last week of June 2005, Reichert, Navigant's Executive Managing Director, promised Kostakis that he would be named a Managing Director of Navigant within a year and that Navigant would ensure his total compensation equaled $400,000.  Amended Counterclaims ¶¶124-125.  He also alleges that Navigant, at the time it made these promises, had a "preconceived and undisclosed intention of never carrying [them] out."  ¶¶156, 158.  Kostakis also alleges that he was to be named a Managing Director at Bearing Point, Amended Counterclaims ¶¶124, 163, which opportunity he lost by going to Navigant, and additional damages stemming from lost professional opportunities, loss of professional reputation, diminution of his earnings and earnings capacity, and damage to his career growth and potential.  *Id.* at ¶ 163.

Kostakis also alleges that Navigant made these and similar promises to him and other prospective hires and routinely did not honor them.  He alleges Navigant did so with the motivation of hiring valuable recruits to assist Navigant in building a

successful capital markets practice.  Amended Counterclaims, ¶¶
159-161.

These allegations state a claim for fraudulent inducement
and meet the pleading requirements of Rule 9(b).[8]  Assuming their
truth, they demonstrate that Navigant made a false statement of
material fact, that it did so knowingly to entice recruits, and
that Kostakis relied on these promises, which he did to his
detriment.

However, Navigant argues that Kostakis "forfeited the legal
right to complain about being wrongfully induced into accepting
employment by ratifying the employment agreement by continuing to
reap the financial and business benefits of the agreements and to
accept compensation under their terms."  Def. Mem. at 8.
However, the case Navigant cites in support of this argument
undercuts it, because it makes clear that "despite [plaintiff's]
ratification of the contract by accepting payments from
[defendant], [plaintiff] would be entitled to damages arising
from fraud if he could prove that such fraud in the inducement
occurred and that he was damaged thereby."  *Petrello v. White*,
412 F. Supp.2d 215, 227 (E.D.N.Y. 2006) (citing cases); *see also*

---

[8]  While I agree with Navigant that Kostakis's allegations regarding
Navigant's post-employment reaffirmation and renewal of its promise to pay
Kostakis at least $400,000 do not meet Rule 9(b)'s pleading requirements, such
an argument is irrelevant as Kostakis has conceded that these allegations do
not form a separate basis of his claim for fraudulent inducement.  Because
Kostakis's other allegations are sufficient to support his claim, the fact
that his post-employment allegations are insufficient does not defeat his
entire claim.

*Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109 (1st
Dep't 1994) ("[I]t is well settled that a defrauded party to a
contract may elect to either disaffirm the contract by a prompt
rescission or stand on the contract and thereafter maintain an
action at law for damages attributable to the fraud.").

Though Kostakis has pleaded an affirmative defense for
rescission, Amended Answer ¶ 107, which is inconsistent with a
claim for damages for fraud, this also does not bar his
fraudulent inducement claim. *See Fed. R. Civ. P.* 8(e)(2) ("A
party may also state as many separate claims or defenses as the
party has regardless of consistency and whether based on legal,
equitable, or maritime grounds."); *see also Allied Irish Banks,
P.L.C. v. Bank of America, N.A.*, No. 03-CV-3748, 2006 WL 278138,
at *13 (S.D.N.Y. Feb. 2, 2006) ("tort and rescission claims may
be pleaded simultaneously as alternative causes of action");
*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 768
F.Supp. 115, 117 (S.D.N.Y. 1991) ("Under New York law, fraud and
rescission are separate causes of action, which may be pleaded in
the alternative even though legally inconsistent.").[9]

Navigant next argues that there can be no fraudulent
inducement since Kostakis's position at Navigant and his
compensation were what he agreed to in writing, via the Offer

---

[9]  Navigant is correct that Kostakis may not both rescind a contract and
recover damages for fraud, Def. Rep. Mem. at 13, but Kostakis need not elect a
remedy until a later stage in the proceedings. *See Ajettix Inc. v. Raub,* 804
N.Y.S.2d 580, 592 (N.Y. Sup. Ct. 2005).

Letter and other agreements.  Def. Rep. Mem. at 9-10.  The argument at best raises a factual dispute as to whether defendant reasonably relied on plaintiff's oral promises which cannot be resolved on a Rule 12(b)(6) motion.

Further, as a general rule, a plaintiff cannot maintain a claim for fraud brought alongside a breach of contract claim. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).  There are three exceptions to this rule, however, two of which are relevant here: when a plaintiff (i) demonstrates the fraudulent misrepresentation is collateral or extraneous to the contract; or (ii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages.  Navigant argues that the alleged oral promises concerned the same subject matter as the employment agreements and that they are thus not sufficiently collateral to sustain the claim of fraudulent inducement.

I need not decide whether the misrepresentation is collateral, however, because Kostakis seeks special damages under this claim for loss of employment opportunities at Bearing Point (including his imminent promotion), loss of professional representation, diminution of earnings and earning capacity, and damage to career growth and potential.  Amended Counterclaims ¶ 163; *see Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (allegation that plaintiff was orally promised she would be

the head of defendant's environmental law department gave rise to claim for fraudulent inducement); *Jelks v. Citibank N.A.*, 2001 WL 50891, at *3 (S.D.N.Y. Jan. 22, 2001) ("Since the Second Circuit's seminal decision in *Stewart v. Jackson & Nash*, courts have upheld claims for fraudulent inducement where the injury alleged stems from leaving a former place of employment or agreeing to remain in a compromised position at a current place of employment, rather than from the termination itself or failure to perform terms of the employment agreement.").

Because Kostakis has sufficiently and plausibly pleaded a claim for relief for fraudulent inducement, Navigant's motion to dismiss Kostakis's First Amended Counterclaim is denied.

    ii. *Second Amended Counterclaim - Breach of Contract*

Navigant also argues that Kostakis has failed to state a claim for breach of contract because 1) the claim is precluded by the signed Offer Letter, which constitutes Kostakis's employment agreement; 2) various of the agreements Kostakis signed contain integration clauses that preclude Kostakis from claiming the alleged oral promises changed the terms of the written agreements; and 3) the parol evidence rule precludes Kostakis from arguing that the alleged oral promise changed the terms of the written agreements.

To state a claim for breach a contract, Kostakis must allege (1) a contract existed between the parties; (2) Kostakis has in

all respects complied with his obligations; (3) Navigant failed
to perform its obligation under the contract; and (4) Kostakis
has been damaged as a result of Navigant's actions. *Weiss v. La
Suisse, Societe D'Assurances Dur La Vie*, 226 F.R.D. 446, 450
(S.D.N.Y 2005) (citations omitted). If permitted to offer
evidence of the oral promise, discussed *infra*, Kostakis has
sufficiently alleged these elements. He alleges the existence of
a pre- as well as a post-employment contract to pay him
$400,000,[10] and the existence of a pre-employment contract to
promote him after his arrival at Navigant. He further alleges
that he worked for Navigant and helped it create a successful
capital markets program, and that Navigant paid him only
approximately $300,000 and failed to promote him.

Navigant argues that Kostakis fails to state a claim for
breach of contract because the plain language of the Offer Letter
sets forth that Kostakis's compensation is discretionary. In
particular, Navigant cites a clause that describes Navigant's
bonus program as "contingent" and the statement that "[Navigant]
reserves the right to periodically review and adjust each of its
compensation and benefit programs it offers to you in its sole
discretion." Offer Letter, pp. 1 and 3. However, Kostakis has

---

[10] Kostakis alleged that he supplied consideration for the new oral
promises by continuing to work as an at-will employee. Amended Counterclaims
¶ 172. *See, e.g., Kaplan v. Aspen Knolls Corp.*, 290 F. Supp.2d 335, 338
(E.D.N.Y. 2003) (continued service by at-will employee is sufficient
consideration to support employer's compensation promise).

alleged that Navigant promised "he could expect to receive total compensation of at least $400,000" and that "if the $400,000 figure exceeded the amount that Kostakis was to receive from his base salary and any other compensation that might be paid by Navigant, Navigant would make up the difference to ensure that his total compensation equaled $400,000." The alleged promise to pay Kostakis $400,000 is separate and apart from the promises in the Offer Letter and thus the promise is not subject to the discretionary terms of the Offer Letter. Additionally, the discretionary language in the Offer Letter refers only to Kostakis's compensation, and therefore would not, in any event, preclude a claim based on the alleged promise of a promotion. Moreover, there is no indication that Kostakis's allegations of post-employment promises, made in 2006, would be subject to the Offer Letter, which was signed in 2005. Thus, the post-employment promises are not subject to the Offer Letter's discretionary terms.[11]

Navigant next argues that because the Offer Letter included the terms of Kostakis's employment and specifically references

---

[11] Navigant asserts any payment to increase Kostakis's compensation to $400,000, based on the alleged post-employment promises, would come from its bonus pool. Navigant then cites the Recovery Agreement to assert that Navigant's bonus program was governed by an agreement expressly prohibiting oral modification. However, the Recovery Agreement, even if applicable, applies only to Kostakis's signing bonus. No agreement concerning Navigant's bonus program is referenced or attached to the Complaint, and there is no indication, if one exists, that it bars oral modification.

the Recovery Agreement and his Stock Award Agreement[12], the
documents should be considered a single agreement.  Thus,
Navigant argues that the integration clause in the Stock Award
Agreement precludes Kostakis from admitting evidence of an oral
promise.

Under New York law "Generally, separate writings are
construed as one agreement if they relate to the same subject
matter and are executed simultaneously."  *Commander Oil Corp. v.
Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993).
Further, writings which form "part of single transaction and are
designed to effectuate the same purpose [must] be read together,
even though they were executed on different dates . . ."  *TVT
Records v. The Island Def Jam Music Group*, 412 F.3d 82, 89 (2d
Cir. 2005) (citations omitted).  "Whether multiple writings
should be construed as one agreement depends upon the intent of
the parties," *Id.* (quoting *Commander Oil Corp.,* 991 F.2d at 52-
53).  This issue is usually a question of fact for the jury, "but
if the documents in question reflect no ambiguity as to whether
they should be read a single contract, the question is a matter
of law for the court."  *Id.* (citations omitted).  "Contracts
should be interpreted together if 'the parties assented to all
the promises as a whole, so that there would have been no bargain

---

[12]  As I note in footnote 6, the Offer Letter does not actually refer to
the Stock Award Agreement.

whatever if any promise or set of promises had been stricken.'" *Commander Oil Corp.*, 991 F.2d at 53 (quoting Williston, Contracts, § 863, at 275 (3rd ed. 1970)).

I cannot conclude as a matter of law that the agreements should be viewed as one. As Kostakis never signed the Stock Award Agreement or received an executed copy from Navigant, it is not clear that "if any promise or set of promises has been stricken" Kostakis would not have joined Navigant. Moreover, the intent of the parties seems to indicate the agreements were meant to be read separately, insofar as the parties drafted three "no oral modification" provisions[13], three severability provisions,[14], two "no waiver" provisions,[15], and three choice of law provisions.[16]

Moreover, even if the agreements should be viewed as one integrated writing, the two provisions cited by Navigant in support of its argument that preclude Kostakis from entering evidence of the oral promise do nothing of the sort. The Recovery Agreement, which concerns Kostakis's $100,000 signing bonus, states it can be amended only in writing. Even if this

---

[13] Non-Solicitation Agreement ¶ 21; Recovery Agreement ¶ 8; Stock Award Agreement ¶ 16.

[14] Non-Solicitation Agreement ¶ 22; Recovery Agreement ¶ 9; Stock Award Agreement ¶ 14.

[15] Recovery Agreement ¶ 7; Stock Award Agreement ¶ 16.

[16] Non Solicitation Agreement ¶ 26; Recovery Agreement ¶ 5; Stock Award Agreement ¶ 13.

-18-

provision were applicable across all the agreements, it would not foreclose a claim based on an oral agreement entered into prior to the agreement.  At most it would foreclose Kostakis's allegation that the promise of $400,000 in compensation was reaffirmed and renewed in 2006.

The Stock Award Agreement, which concerns the $55,000 in equity granted to Kostakis, contains an integration clause that by its terms refers only to the equity award and other documents referred to in the Stock Award Agreement.  As discussed *supra*, the only such document is Navigant's Long-Term Incentive Plan.  The integration clause in the Stock Award Agreement explicitly states that it is the "entire agreement of the parties with respect to the subject matter hereof . . ."  Thus, the integration clause by its terms is limited to the restricted equity granted to Kostakis under Navigant's Long-Term Incentive Plan.  The unambiguous meaning of this clause is that it should apply only to the Stock Award Agreement.

Lastly, Navigant argues that the alleged oral promised is barred by the parol evidence rule.  The Second Circuit has stated the parol evidence rule as follows:

> When two parties have made a contract and have
> expressed it in a writing to which they have both
> assented as the complete and accurate integration of
> that contract, evidence, whether parol or otherwise, of
> antecedent understandings and negotiations will not be
> admitted for the purpose of varying or contradicting
> the writing.

*Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988).  If the writing is not integrated, parol evidence of additional contract terms may be admitted to complete the agreement, so long as the additional terms do not contradict the written terms.  *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F.Supp. 347, 352 (S.D.N.Y. 1996).

The operative agreement for determining whether the parol evidence rule applies is the Offer Letter.  The Offer letter does not contain an integration clause.  "When a contract lacks an express integration clause the district court must determine whether the parties intended their agreement to be an integrated contract by reading the writing in light of the surrounding circumstances."  *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, (2d Cir. 1999) (internal quotation marks and citations omitted).  Factors to consider in deciding whether a contract is integrated include:

> whether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental; if the contract, which does not include the standard integration clause, nonetheless contains wording like "in consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that "the foregoing correctly sets forth your understanding of our Agreement."

*Arias-Zeballos v. Tan*, 2006 WL 3075528, at *7-8 (S.D.N.Y. Oct.
26, 2006) (citing *Morgan Stanley High Yield Sec., Inc.*, 269 F.
Supp.2d 206, 214 (S.D.N.Y. 2003)).

On the pleadings, viewing the facts most favorably to
Kostakis, I cannot conclude that the Offer Letter is an
integrated agreement based on these factors.  I note that the
oral promise was not so complex that it would be reduced to
writing and Kostakis was not represented by counsel.  Though it
was alleged that Navigant began to recruit Kostakis in June 2005,
there are no allegations concerning the length of any actual
negotiations over the terms of the Offer Letter or other
agreements.  While one could view the subject matter of the
alleged oral promises as "fundamental", it is not outside the
realm of possibility that Kostakis, who is not a lawyer, believed
the alleged oral promise.[17][18]

---

[17] Generally, courts determining whether or not an agreement is
integrated based on these factors do so at the summary judgment stage.  *See
Adler & Shaykin v. Wachner*, 721 F. Supp. 472, 477 (S.D.N.Y. 1988); *Wilson-Gray
v. Jay Feinberg Ltd.*, 1990 WL 209635 (S.D.N.Y. Dec. 17, 1990); *Namad v.
Salomon, Inc.*, 147 A.D.2d 385 (1st Dep't 1989).  Though courts have made this
determination at the motion to dismiss stage, *see, e.g., Arias-Zeballos*, 2006
WL 3075528, at *7 (declining to find agreement integrated as a matter of law),
the allegations are not sufficient to allow me to do so as a matter of law in
this instance.

[18] The New York Court of Appeals set forth an exception to the parol
evidence rule in *Mitchill v. Lath*, 247 N.Y. 377, 380-81 (1928):
> [B]efore such an oral agreement as the present is received to vary
> the written contract at least three conditions must exist, (1) the
> agreement must in form be a collateral one; (2) it must not
> contradict express or implied provisions of the written contract;
> (3) it must be one that parties would not ordinarily be expected
> to embody in the writing . . . [The oral agreement] must not be so
> clearly connected with the principal transaction as to be part and
> parcel of it.

Because I cannot determine as a matter of law whether the agreement is

Moreover, the alleged oral promises do not contradict the terms of the Offer Letter. Reichert promised Kostakis that Navigant would make up any difference between the amount Kostakis was to receive from his base salary and any other compensation from Navigant, to ensure he received $400,000. Further, that the Offer Letter stated Kostakis would be a Director does not contradict the promise that he would be named a Managing Director within a year.

Thus, because Kostakis has plausibly pleaded the elements of breach of contract, Navigant's motion to dismiss the Second Counterclaim is denied.[19]

## Conclusion

For the reasons set forth above, Navigant's motion to dismiss Kostakis's Amended Counterclaims is denied. The Clerk is directed to transmit a copy of the within to all parties and to Magistrate Judge Azrack.

---

integrated, I need not consider whether the exception to the parol evidence rule applies.

[19] Moreover, because Kostakis has alleged a post-employment oral contract to pay him annual compensation of $400,000, even if the parol evidence rule barred admission of evidence concerning his pre-employment agreement with Navigant, he has still pleaded a breach of contract claim. As the parol evidence rule does not apply to subsequent agreements or modifications, Kostakis would be permitted to offer evidence regarding the agreement that followed his signing of the Offer Letter. *Arias-Zeballos*, 2006 WL 3075528, at 8, n.8 (" . . . the parol evidence rule is rendered inapplicable, in whole or in part, by the fact that, according to the complaint, defendant repeatedly promised plaintiff, *after* the written contract was signed, that defendant would pay her additional compensation in consideration for plaintiff's continued work . . .") (emphasis in original).

SO ORDERED.

Dated :    Brooklyn, New York
           October 3, 2007

                  By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                       United States District Judge